IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HALLIE B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-00200-SB <br><br> **OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Hallie B. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and all parties recently consented to the jurisdiction of a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.     PLAINTIFF'S APPLICATIONS

Plaintiff was born in July 1967, making her forty-seven years old on January 1, 2015, her amended alleged disability onset date. (Tr. 47, 228.) Plaintiff graduated from high school, completed all but three credits needed to graduate college, and has past relevant work experience as a web designer. (Tr. 27, 281.) In her applications, Plaintiff alleged disability due to

PAGE 2 – OPINION AND ORDER

depression, anxiety, posttraumatic stress disorder ("PTSD"), rheumatoid arthritis, Hashimoto's Disease, and interstitial cystitis. (Tr. 280.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 22, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 98, 112, 131, 148, 164.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on November 8, 2018. (Tr. 45-82.)

On December 18, 2018, the ALJ issued a written decision denying Plaintiff's DIB application, but only denying in part Plaintiff's SSI application. (Tr. 15-29.) Specifically, the ALJ found that Plaintiff was disabled beginning on January 1, 2017, but Plaintiff was not disabled prior to that date. (Tr. 29.) On December 9, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-29.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2015, the amended alleged disability onset date. (Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "inflammatory arthritis, interstitial cystitis, thyroid disorder, depressive disorder, anxiety disorder, and substance use disorder." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*) The ALJ then concluded that, prior to January 1, 2017, the date Plaintiff became disabled, Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these exertional limitations: (1) Plaintiff can frequently balance; (2) Plaintiff can occasionally climb, kneel, stoop, crouch, and crawl; (3) Plaintiff can frequently perform handling and fingering bilaterally; (4) Plaintiff can do simple repetitive work with no more than occasional public contact; and (5) Plaintiff needs to avoid concentrated exposure to hazards. (Tr. 20.)

///

At step four, the ALJ concluded that Plaintiff was not able to perform her past relevant work as a web designer. (Tr. 27.) At step five, the ALJ determined that Plaintiff was not disabled prior to January 1, 2017, because a significant number of jobs existed in the national economy that she could perform, including work as a routing clerk, office helper, and production assembler. (Tr. 28.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) rejecting Plaintiff's symptom testimony regarding her limitations prior to January 1, 2017; and (2) discounting the opinions of her treating psychologist Dr. Lusijah Marx, PMHNP, Psy.D., and primary care provider Ruth Saunders, DNP ("NP Saunders"). (Pl.'s Opening Br. at 5-10, ECF No. 20.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and is supported by substantial evidence in the record, and therefore the Court affirms the Commissioner's decision.

I.  **PLAINTIFF'S SYMPTOM TESTIMONY**

  A.  **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

### B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to January 1, 2017[.]") The ALJ was therefore required to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

#### 1. Activities of Daily Living

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.");

PAGE 6 – OPINION AND ORDER

*Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations").

The ALJ discounted Plaintiff's symptom testimony based on her reported activity level. (Tr. 22-23.) The ALJ noted that despite Plaintiff's allegations of disabling symptoms, Plaintiff was "able to drive, go out alone, and shop in stores[,]" "performed some light cleaning[,]" and "spent time visiting with others a couple of times per week and went to a friend's house and the grocery store on a regular basis." (Tr. 23.) Plaintiff also "watched television, read, and used the internet daily," and worked part time building a website for her landlord in 2015 while going to college, which she attended regularly from fall 2014 to summer 2016 with a 3.36 grade point average. (*Id.*) Plaintiff testified she was going to college full time in 2015, that she loved it, and was busy. (*Id.*) Plaintiff also testified she had accommodations while attending school and that she attended part time. (*Id.*) The Court finds that the inconsistency between Plaintiff's activities and her alleged limitations was a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony and was supported by substantial evidence in the record. *See Burrell*, 775 F.3d at 1137-38; *Ghanim*, 763 F.3d at 1165; *Garrison*, 759 F.3d at 1016.

Plaintiff argues that the ALJ erred by failing specifically to identify which aspects of Plaintiff's testimony were inconsistent with her activities of daily living prior to January 1, 2017. (Pl.'s Opening Br. at 8-9.) Plaintiff is correct that Ninth Circuit authority "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) and citing

PAGE 7 – OPINION AND ORDER

*Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)). In *Lambert*, the Ninth Circuit held that it was not enough for the ALJ to "not[e] generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence'" because "this 'boilerplate statement' . . . which is 'routinely include[d]' in ALJ decisions denying benefits, did not 'identify what parts of the claimant's testimony were not credible and why.'" *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1103). In that case, the ALJ did not identify specific activities of daily living or point to specific medical evidence that contradicted the claimant's allegations of disabling impairments, and the Ninth Circuit found that the ALJ's "high-level reasons" to discount the claimant's testimony did "not permit meaningful review." *Lambert*, 980 F.3d at 1277-78.

      Here, the ALJ's explanation for discounting Plaintiff's testimony went beyond boilerplate. The ALJ first summarized Plaintiff's symptom testimony, explaining that she reported chronic fatigue, insomnia, and pain from her rheumatoid arthritis, with her pain and fatigue causing her to not be able to leave her bed or room for days at a time. (Tr. 20). Plaintiff also reported her mental health worsened in 2010, that she has to use the bathroom twenty to thirty times a day due to her bladder condition, and that she does not leave her house without her partner due to her fatigue and mental health symptoms. (Tr. 20-21.) The ALJ next found that Plaintiff's statements regarding "the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to January 1, 2017, for the reasons explained in this decision." (*Id*.) The ALJ then identified a list of Plaintiff's daily activities that contradicted Plaintiff's testimony about her disabling physical and mental health symptoms, including attending college full time, working part time while attending college full time, busy, and loved

PAGE 8 – OPINION AND ORDER

it. (Tr. 23.) Although the ALJ did not tie each of Plaintiff's daily activities to a specific disabling symptom, this Court does not interpret *Lambert* to require that level of granularity. *See Lambert*, 980 F.3d at 1277 (holding that "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits" (citing *Treichler*, 775 F.3d at 1103)); *see also Young v. Saul*, 845 F. App'x 518, 519-20 (9th Cir. 2021) ("The ALJ . . . gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.' The ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." (citing *Lambert*, 980 F.3d at 1277)); *Roscioli v. Saul*, No. 19-cv-03894-VKD, 2020 WL 6940937, at *8 (N.D. Cal. Nov. 25, 2020) (citing the *Lambert* standard but holding that "the cited testimony appears to be entirely consistent with the ALJ's finding that [the claimant] was doing well and could work, despite his mental impairments").

The ALJ must provide sufficient detail about the inconsistencies between Plaintiff's symptom testimony and her daily activities to allow a reviewing court reasonably to discern the ALJ's path. *Cf. Brown-Hunter*, 806 F.3d at 494 (holding that the ALJ erred where a reviewing court could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible"); *see also Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (finding that although "the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonably discern' the ALJ's path") (citation omitted). Here, the Court can reasonably discern from the ALJ's list of Plaintiff's alleged physical and mental health symptoms and the

PAGE 9 – OPINION AND ORDER

list of her reported daily activities that the ALJ concluded that Plaintiff's ability to work part-time and spend the remainder of her days engaging in high-functioning activities was inconsistent with the alleged severity of her symptoms.

In sum, the Court concludes that the ALJ did not err in discounting Plaintiff's symptom testimony based on her reported activities.

### 2. Objective Medical Evidence

The ALJ also discounted Plaintiff's allegations of disabling mental and physical health symptoms because they were inconsistent with the objective medical evidence. (Tr. 22-25.) This was a clear and convincing reason for discounting Plaintiff's testimony. *See Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony on the ground that it was "inconsistent with the medical evidence").

Substantial evidence supports the ALJ's findings. Although the ALJ cited the medical records showing that Plaintiff reported suffering from pain from her arthritis as early as 2009, and a documented history of mental health impairments dating back to December 2011, the ALJ cited several medical records from the amended alleged onset date of January 1, 2015 to the established onset date of January 1, 2017, reflecting that Plaintiff's mental health conditions were stable or improving, and that she stopped seeking treatment without explanation for both her mental and physical health during the times she stated her conditions were worsening. (Tr. 22-25; *see also* Tr. 373, x-rays for rheumatoid arthritis from October 2009; Tr. 448, March 2, 2016, reestablished primary care to get refills for her medication; Tr. 451, September 11, 2015, exacerbation of depression due to new supplements for one week before returning to "normal"; Tr. 454, August 7, 2015, negative for depression; Tr. 458, April 15, 2015, negative for depression; Tr. 456, July 10, 2015, negative for depression; Tr. 460, March 20, 2015, negative

PAGE 10 – OPINION AND ORDER

for depression; Tr. 534, December 12, 2011, earliest instance of seeking mental health treatment in medical evidence; Tr. 640, February 5, 2016, reached out because wanted to restart medication management at Quest, acknowledged that she received letters and voicemails regarding cancellation of her treatment; Tr. 641, September 27, 2016, did not appear for her screening in order to move forward with Quest's services; Tr. 642, January 7, 2016, termination of mental health services due to no longer appearing since last appointment on August 19, 2015; Tr. 653, August 19, 2015, making good progress; Tr. 657, July 28, 2015, reportedly making good progress, decreased trauma symptoms, practicing and training in Reiki, still in school and working part time building a website for her landlord; Tr. 661, July 9, 2015, much progress in her mental/emotional state; Tr. 671, May 26, 2015, feeling better emotionally than she ever has in the past; Tr. 672, May 22, 2015, in school full time, loves it, and is busy; Tr. 676, May 6, 2015, positive mood and engaged and excited about school; Tr. 680, enjoying her sessions and "getting an important emotional release and learning to feel safe more often"; Tr. 681, April 1, 2015, moderate progress in dealing with trauma.) Plaintiff "urges the Court to adopt a different interpretation of the evidence, but the ALJ's finding is supported by substantial evidence" here. *Decarlo v. Saul*, 836 F. App'x 620, 622 (9th Cir. 2021) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

      In sum, the Court finds that the ALJ did not err by discounting Plaintiff's allegations of disabling physical and mental health impairments in light of her daily activities and the medical record evidence.

///

///

///

## II. MEDICAL OPINION EVIDENCE

### A. Applicable Law[2]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence [in the record].'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

---

[2] Plaintiff filed her application on January 12, 2017 (Tr. 15), and therefore the new Social Security regulations governing medical opinion evidence do not apply here. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations applicable to Social Security applications filed on or after March 27, 2017).

PAGE 12 – OPINION AND ORDER

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citation omitted).

### B. Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinions of her treating psychologist Dr. Lusijah Marx, PMHNP, Psy.D., and primary care provider Ruth Saunders, DNP. (Pl.'s Opening Br. at 5-10.)

#### 1. Dr. Marx

##### a. Dr. Marx's Opinion

On October 10, 2018, Dr. Marx filled out a "Mental Residual Functional Capacity Assessment" for Plaintiff. (Tr. 1667.) Dr. Marx indicated she began treating Plaintiff in 2014. (Tr. 1669.) Beginning with Plaintiff's ability to understand, remember, or apply information, Dr. Marx assessed marked limitations in her ability to remember locations and work-like procedures as well as her ability to understand, remember, and carry out detailed instructions of three steps or more which may or may not be repetitive. (Tr. 1667.) She also explained that Plaintiff's mental health impairs her short-term memory which impacts her ability to retain detailed instructions, that Plaintiff is intelligent who in the past was capable of high functionality in sophisticated positions of employment but that her PTSD symptoms seriously impairs her ability to maintain focus for hours a day every day. (*Id.*) Dr. Marx also opined that Plaintiff regularly experiences brain fog, anxiety, depression, and frequently is unable to get out of bed. (*Id.*)

With respect to interacting with others, Dr. Marx assessed extreme limitations in Plaintiff's ability to interact appropriately with the general public or customers, to respond to requests, suggestions, criticism, correction, and challenges from supervisors, to work cooperatively and handle conflicts with coworkers, and to keep social interactions free of excessive irritability, sensitivity, argumentativeness, suspiciousness, or other inappropriate

PAGE 13 – OPINION AND ORDER

behavior. (Tr. 1668.) Dr. Marx noted that Plaintiff had a narrow window of tolerance and lack of resilience. (*Id*.) Combined with her chronic fatigue which exacerbates her irritability and sensitivity, her interpersonal skills are diminished. (*Id*.)

With respect to Plaintiff's ability to concentrate, persist, or maintain pace, Dr. Marx assessed extreme limitations in her ability to work at an appropriate and consistent pace and complete tasks in a timely manner, to ignore or avoid distractions while working and work with others without interrupting or distracting them, to sustain an ordinary routine and regular attendance at work, and to work a full day and complete a full week without needing more breaks than allotted. (*Id*.) Dr. Marx explained that as Plaintiff's anxiety, depression, and sensitivity fluctuates without obvious triggers but that they connect to increases in chronic pain and fatigue, which would mean needing extra time and days off. (*Id*.) Dr. Marx also indicated Plaintiff would be off task about 75% of the time and would be absent more than two days a week. (*Id*.)

Finally, on Plaintiff's adaptability, Dr. Marx assessed extreme limitations in her ability to manage psychologically based symptoms, to set realistic goals and make plans for oneself independently of others, and to maintain personal hygiene and attire appropriate to a work setting. (Tr. 1669.) Dr. Marx opined that chronic PTSD symptoms are difficult to manage, especially in combination with chronic pain and fatigue which impairs the ability to access and maintain symptom management. (*Id*.)

### b. The ALJ's Treatment of Dr. Allen's Opinion

The ALJ did not assign "great weight" to Dr. Marx's opinion. (Tr. 24; *but see* Tr. 26, assigning "some weight" with respect to Plaintiff's more recent functioning[.]") The ALJ discounted Dr. Marx's opinion because "[her] records, and those of other providers, fail to contain any findings that would support the extreme limitations assessed[,] . . . [her opinion]

PAGE 14 – OPINION AND ORDER

relied heavily on the claimant's subjective reports[,] . . . [her opinion is not] supported by treatment records prior to the established onset date[,] . . . [and Plaintiff's] activities, including the ability to attend school regularly, are not consistent with the limitations assessed by Dr. Marx." (Tr. 24.)

### c. Disposition

The ALJ provided several legally sufficient reasons to discount Dr. Marx's opinion.

Generally, "a treating physician's opinion is . . . afforded the greatest weight in disability cases, [however,] it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Taylor v. Astrue*, No. CV 08-0230-AA, 2009 WL 10690945, at *6 (D. Or. Mar. 25, 2009) (citing *Batson v. Comm'r SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004)) (simplified). When evidence in the record contradicts the opinion of a treating physician, the ALJ must present "specific and legitimate reasons" for discounting the treating physician's opinion, supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Here, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to discount Dr. Marx's opinion.

First, Plaintiff argues that her subjective symptom testimony was not a valid reason to reject Dr. Marx's opinion (Pl.'s Opening Br. at 9), but as discussed above, the ALJ did not err in discounting Plaintiff's symptom testimony.

Second, the ALJ also discounted Dr. Marx's opinion due to a lack of supporting objective medical evidence, noting that her proffered "limitations are not persuasive or given great weight because they are not well documented in or supported by treatment records prior to the established onset date, which fail to contain any significant mental status examination findings."

PAGE 15 – OPINION AND ORDER

(Tr. 24, citing Tr. 659.) Plaintiff is correct that her allegations of chronic fatigue, arthritis, anxiety, PTSD, and depression are supported by evidence in the record during the relevant period. (*See, e.g.*, Tr. 447, 451-52, 455-58, 460-61, 643, 646-48, 653, 659, 661, 664-65, 667-72, 675.) However, the ALJ is correct that the objective medical evidence does not support Dr. Marx's extreme limitations prior to the established onset date, including because there are no significant mental status examination findings between January 1, 2015, and January 1, 2017. In fact, Dr. Marx charted after Plaintiff's May 2015, visits, that Plaintiff was "friendly and very talkative[,]" reported she was "feeling better emotionally than she almost ever has in the past[,]" "is in school full time [and] loves it[,]" and "reports positive shifts around mood and feeling engaged and excited about school" (despite some anxiety about her financial situation). (Tr. 671-704.) It appears Plaintiff discontinued mental health counseling and medication management with Dr. Marx in the fall of 2015 and did not reengage at Quest until late 2016. (*See* Tr. 637-42.) The medical records reflect that Plaintiff's physical and mental health began to deteriorate in early 2017, which is consistent with the ALJ's disability finding as of January 1, 2017. (*See, e.g.*, Tr. 606-36.) In light of this evidence, the Court concludes that the ALJ's interpretation of Dr. Marx's opinion was reasonable, and the Court will not second guess the ALJ's findings. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

Third, the ALJ found that Dr. Marx's opinion was inconsistent with Plaintiff's activities of daily living, including Plaintiff's full-time enrollment in school and ability to work part-time while attending school. (Tr. 23-24.) An ALJ may discount a medical opinion where the assessment is "inconsistent with [the claimant's] daily activities." *Hernandez v. Saul*, 808 F.

PAGE 16 – OPINION AND ORDER

App'x 425, 427 (9th Cir. 2020); *see also* Concannon v. Saul, No. 20-15732, 2021 WL 2941767, at *2 (9th Cir. July 13, 2021) (finding that "conflicts between a physician's opinion and a claimant's activities are specific and legitimate reasons" for discounting the opinion (citing *Ghanim*, 763 F.3d at 1162-63)).

The ALJ's findings here were supported by substantial evidence in the record. Specifically, during the relevant time period, Plaintiff attended college full time, generally kept up with assignments, and was also able to work part time for her landlord designing a website. (Tr. 23-24.) While Plaintiff was provided accommodations for her schoolwork, she reported loving it and staying busy. (Tr. 672.) Plaintiff also maintained a grade point average of 3.36, which does not support Dr. Marx's extreme limitations in Plaintiff's mental abilities. (Tr. 359.) The Court concludes that the ALJ did not err in discounting Dr. Marx's opinion as inconsistent with Plaintiff's activities of daily living.

Finally, the ALJ discounted Dr. Marx's opinion, in part, because the opinion was based largely on Plaintiff's self-reports. (Tr. 24.) "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (simplified). However, "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology[.]" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)) (simplified). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields" and "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient [b]ut such is the nature of psychiatry." *Id.* "Thus, the rule allowing an ALJ to reject

opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id*. (holding that the ALJ erred by discounting a medical opinion based on its reliance on the plaintiff's self-reports, noting that the opinion also included "a clinical interview and a mental status evaluation [which are] objective measures [that] cannot be discounted as a 'self-report'"). While the ALJ cannot reject Dr. Marx's opinion solely because it relies heavily on Plaintiff's self-reports, the ALJ discounted the opinion based on the several other valid reasons discussed above.

In summary, the Court finds that the ALJ presented specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Marx's opinion.

### 2. **Ruth Saunders, DNP**

#### a. **NP Saunders' Opinion**

On October 5, 2018, NP Saunders completed a "Physical Capacity Statement" at Plaintiff's request. (Tr. 1344-47.) NP Saunders noted that Plaintiff was being treated for interstitial cystitis, urinary frequency, rheumatoid arthritis, anxiety and depression, PTSD, and GERD. (Tr. 1344.) NP Saunders also noted that Plaintiff's arthritis worsened with prolonged and repetitive activities, Plaintiff could only walk two blocks before needing to rest, could sit and stand or walk for less than two hours, needs to be able to shift positions about every thirty minutes, and would need additional and unscheduled breaks during an eight-hour workday with extra bathroom breaks and naps due to exertion. (Tr. 1344-45.) NP Saunders indicated Plaintiff could never crawl, climb, crouch, stoop, or do repetitive grasping, pushing, or pulling with her hands or feet, and that Plaintiff was incapable of even a low stress job. (Tr. 1346.) NP Saunders further opined that Plaintiff would be distracted for half the day due to her symptoms and would miss more than two days of work per month. (Tr. 1347.)

///

PAGE 18 – OPINION AND ORDER

### b. The ALJ's Treatment of NP Saunders' Opinion

After summarizing NP Saunders' report and findings, the ALJ did not assign NP Saunders' opinion "great weight" because NP Saunders did not begin treating Plaintiff until after Plaintiff's established onset date, and her medical opinion is based on Plaintiff's self-reports and not supported by the objective medical evidence of record. (Tr. 26-27.)

### c. Disposition

Plaintiff argues that the ALJ failed to identify legally sufficient reasons supported by substantial evidence in the record to discount NP Saunders' opinion. (Pl.'s Opening Br. at 9.) Plaintiff does not point to any medical records in support of her argument, citing only to the questionnaire. (Tr. 1344-47.) The Commissioner responds that the ALJ properly discounted NP Saunders' opinion because it is not supported by objective findings in the medical record. (Def.'s Br. at 12, ECF No. 21.)

Plaintiff's amended alleged onset date is January 1, 2015, and her established date of disability is January 1, 2017. (Tr. 15, 85.) Plaintiff appears to have met NP Saunders for the first time in September 2016, when Plaintiff sought a gynecological exam and treatment for ringworm. (Tr. 446.) After this initial appointment, NP Saunders continued to treat Plaintiff for ringworm later in 2016 (*see, e.g.*, Tr. 442-43), and also assisted with medication management relating to Plaintiff's depression. (*See* Tr. 442, noting on November 1, 2016, that Plaintiff stopped taking Cymbalta in favor of more natural medication.) Thus, Plaintiff's treatment history with NP Saunders leading up to January 1, 2017, does not support NP Saunders' proffered limitations.

Plaintiff did not see NP Saunders again until after the January 1, 2017, onset date, and NP Saunders continued to treat Plaintiff throughout 2017 and 2018. NP Saunders completed Plaintiff's "physical capacity statement" on October 5, 2018, but did not indicate whether her

PAGE 19 – OPINION AND ORDER

opinion applied to the time period leading up to Plaintiff's established onset date, during which time she had not yet engaged in a regular treatment history with Plaintiff. (Tr. 1344-47; *see also* Tr. 27, finding NP Saunders' opinion "less persuasive regarding the period prior to the established onset date[.]") There is no dispute that Plaintiff was disabled as of October 5, 2018. For these reasons, the Court finds that the ALJ did not err by discounting NP Saunders' opinion as less persuasive regarding the period prior to the established onset date, and for a lack of support by objective medical evidence.

In summary, the Court finds that the ALJ presented specific and legitimate reasons, supported by substantial evidence, for discounting NP Saunders' opinion.

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 31st day of July, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge